**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ZELLINA HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 12-00510-KD-N** |
| | ) | |
| **BOARD OF SCHOOL COMMISSIONERS** | ) | |
| **OF MOBILE COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This action is before the Court on the motion for summary judgment, brief in support of

the motion, suggested determinations of undisputed facts and conclusions of law, and evidentiary

material filed by defendant Board of School Commissioners of Mobile County, Alabama (the

Board) (docs. 28, 29), the response in opposition filed by plaintiff Zellina Hill (Hill) (doc. 31)

and the Board's reply (doc. 32).  Upon consideration, and for the reasons stated herein, the

Board's motion is **GRANTED**.

**I. Background**

On August 15, 2012, Hill filed a *pro se* complaint against Alfred Perkins alleging sexual

harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of

1964, as amended. (Doc. 1)  Hill amended her complaint on March 18, 2013, to name the Board

as the sole defendant. (Doc. 14)  The Board answered the complaint on April 25, 2013. (Doc. 19)

The Board denied Hill's allegations and raised its affirmative defenses.  Perkins was dismissed

on May 15, 2013. (Doc. 21)  The Board has now filed its motion for summary judgment and

documents in support and Hill has filed her response.

**II. Findings of Fact**[1]

Hill was hired by the Board in 2002 as a custodian and worked in that capacity at LeFlore High School during the 2010-2011 school year.  Perkins was the Plant Manager/Plant Engineer and supervised Hill's work and the work of the other custodians, including R.L. Lewis.  Perkins had the authority to evaluate Hill, but her ultimate supervisor was Principal Alvin Dailey.

After a staff meeting in March 2010, Perkins asked Hill whether she had a sexual relationship at a motel with Lewis because both had been absent from work the same day.  According to Hill, Perkins "stated all I could think about was you and him at a motel.  If I knew where the hotel was I would have gone to find you" and he "later asked 'aren't my lips big enough? I don't have enough money?'" (Doc. 31, p. 2,[2] Doc. 29-3, p. 12-13, Hill Deposition)  Perkins did not touch her during that meeting nor had Perkins ever made any inappropriate advances toward her physically. (Doc. 29-3, p. 14-15)

In August 2010, during a staff meeting and in front of Hill's coworkers and a church member, Perkins addressed her as "Mr. Lewis' wife" said that Hill and Lewis acted like "lovers".

---

[1] The Court has made its determination of facts by "view[ing] the facts and draw[ing] all reasonable inferences in the light most favorable to the nonmoving party." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir.2013).

[2] In response to summary judgment, Hill has submitted a narrative of the events supporting her complaint.  (Doc. 31, 1-5)  Hill has also included additional handwritten notes.  (Doc. 31 17-20, 22-23)  The Court cannot ascertain whether Hill's handwritten notes were made in conjunction with her grievance or as personal notes regarding the incidents involving Perkins.  Giving the liberal construction due to *pro se* complaints, the Court construes the notes as additional allegations of facts in support of her complaint. Although these notes are not in affidavit form, the court will assume that Hill would testify consistent with these notes.  *See* Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice."); *BoxerX v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.") *cert. denied*, 549 U.S. 1323, 127 S.Ct. 1908 (2007) (quotations omitted); *Allen v. East Alabama Medical Center,* 2012 WL 5498011, *1 n.2 (M.D. Ala. Oct. 23, 2012) (construing all ten of *pro se* plaintiff's written statements as an amendment to his complaint).

(Doc. 29-3, p. 17)  On August 11, 2010, Hill complained about the false accusation to Principal

Dailey. (Doc. 31, p. 2)  On August 18, 2010, Hill complained to "Mr. Hack, HR representative

about Mr. Perkins' continued untrue comments about an affair between Mr. Lewis and" Hill

(Doc. 31, p. 2)

On August 23, 2010, Perkins sent a memorandum to Hill stating:  "This memo serves as

the first letter regarding some concerns with you not clocking out when leaving campus.  On

August 19, 2010, you left campus without clocking our for lunch . . . By copy of this letter to

Mr. Dailey, I am requesting that a copy of this letter be place[d] in your personnel file." The

memorandum indicates that a copy was sent to Principal Dailey, Beverly Hales in Human

Resources, and "Personnel File". (Doc. 31, p. 15)[3]

On August 27, 2010, Perkins sent a memorandum to Hill stating "[o]n Thursday, August

26, 2010 you fail to show up for employees shift meeting."  The memorandum contained a "cc."

to "Personnel File." (Doc. 31, p. 13)

---

[3] Hill has presented copies of several documents including Perkins' memoranda and her
Grievance forms.  Generally, documents such as these must be authenticated in order for
consideration at summary judgment.  However, the Board has not objected to the authenticity of
these documents and it appears that they could be reduced to an admissible form, *i.e.*,
authentication by the appropriate records custodian. *See Zukowski v. Foss Maritime Co.,* 2013
WL 1966001, *4 (S.D. Ala. May 10, 2013) ("However, even in the face of an objection to
reliance upon nonauthenticated records, there is authority to indicate that, at the summary
judgment stage, the court may rely upon non-authenticated records where it finds that those
records could be reduced to admissible evidence at trial." (citing *Pritchard v. Southern Co. Serv.,*
92 F.3d 1130, 1135 (11th Cir.1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996),
aff'd, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); and *Coker v. Tampa Port Authority*,
962 F.Supp. 1462, 1467 (M.D.Fla.1997)); *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th
Cir.1999) ("a district court may consider a hearsay statement in passing on a motion for
summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced
to admissible form.' ").

On August 30, 2010, Perkins sent a memorandum to Hill stating "[o]n Friday, August 27, 2010 you fail to show up for employees staff meeting." The memorandum contained a "cc." to "Personnel File." (Doc. 31, p. 14)

Also on August 30, 2010, Hill responded to Perkins and Dailey regarding the August 23, 2010 memorandum. Hill explained that she had forgotten to punch out and that in the past, in this circumstance, the practice was to write a note to the bookkeeper to correct the employee's time. Hill also contested Perkins' implication that she did not take her job seriously and expressed her feeling that "this type of implication, and this letter as a whole, is retaliation for allegedly speaking with a representative of the Mobile County AEA". Hill requested that the memorandum be removed from all files, including her personnel file. (Doc. 31, p. 16)

Hill testified that after Perkins wrote her up, her relationship with the teachers changed. She believed that she had a good relationship with the teachers, but "after this happened, people just seemed like they started shying away." (Doc. 29-3, p. 5)

On September 10, 2010, Hill, through her representative E. Beck, UniServ Director for the Alabama Education Association, filed a Level 1 Grievance with Principal Dailey. The Grievance stated as follows:

> That the Plant Engineer at LeFlore HS has violated, misinterpreted or misapplied policy(ies) of the Mobile County Board of School Commissioners. The issue in question is whether the Plant Engineer has established a hostile work environment for Mrs. Hill by alleging that she and another custodian were having an inappropriate relationship.

(Doc. 31, p. 10; Doc. 14, p. 11 (letter referencing Level 1 Grievance)) The "proposed resolution" was "[t]hat the Mobile County Public School System (MCPSS) reprimand the Plant Manager and instruct him to adhere to and follow its policies and procedures." (Doc. 31, p. 10)

In mid-September, Hill was admitted to Forrest General Hospital in Hattiesburg,

Mississippi. (Doc. 14, p. 10; Doc. 31, p. 25). The Return to Work Release indicates that Hill was hospitalized from September 14, 2010 through September 18, 2010, and was released to return to work on September 21, 2010. (*Id.*) Hill alleges that she was hospitalized for mental health treatment because Perkins' actions "put" her "into a state of depression" and that the Board paid her hospital bill. (Doc. 14, p. 2; Doc. 31, p. 5)

On September 24, 2010, Hill filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission wherein she alleged as follows:

> I am a Black female. I was hired by the Respondent on October 1, 2002 as a Custodian. Since March 2010 Alfred Perkins (Plant Engineer/Supervisor) has sexually harassed me. I complained to management but no action has been taken. the harassment continues.
>
> After a meeting in March 2010, Mr. Perkins asked my coworkers to leave the room because he wanted to speak to me. He asked if I was having a sexual relationship at a motel with R. L. Lewis because we had been absent the same day- He stated "all I could think about was you and him at a hotel together. If I knew where the hotel was l would have gone to find you.' He later asked, "aren't my lips big enough?"
>
> In August 2010, during a school meeting Mr. Perkins asked Mr. Lewis if we were having an affair. He referred to us as husband and wife. This accusation is false. On August 11, 2010, I complained to Alvin Dailey, Principal, and he told me to pray about it. On August 18, 2010, I complained to Mr. Hack, HR Representative, about Mr. Perkin's continued untrue comments about an affair between Mr. Lewis and me. No action was taken. I filed a grievance on September 2, 2010. To date no action has been taken.

(Doc. 31, p. 8; Doc. 1, p. 4)

On October 20, 2010, Hill requested a Level II Grievance hearing. Hill explained that no response to the Level I grievance filed September 8, 2010[4] had been received. (Doc. 31, p. 11)

At some time after the incidents occurred, Hill asked Principal Dailey to help her transfer

---

[4] Hill submitted a copy of a Grievance dated September 10, 2010. (Doc. 31, p. 10) This date may be incorrect.

to another school. (Doc. 31, p. 19)  At some time in October or November 2010, Principal Dailey offered Hill a transfer to Davidson High School.  Hill refused the transfer because Davidson was too far from her home. (Doc. 29-3, p. 30-33)

A Mobile County School System Employee Relations fax, dated November 3, 2010, stated that "Mr. Perkins has been counseled and received the appropriate training regarding harassment." (Doc. 31, p. 24)

On December 1, 2010, Hill filed a petition for a Level III Grievance review to Dr. Roy Nichols, Superintendent of the Mobile County Public School System. (Doc. 31, p. 12)  In the petition, Hill noted that she had not received any response to her Level I Grievance and that no Level II appeal hearing was scheduled. (*Id*.)

In a note dated December 10, 2010, Hill wrote as follows:

I was told to go [to] the field house at 3:00 but before 3:00 there were other area that could be clean.  I began clean, lost track of time.  I was cleaning, when Mr. Perkins walk up with an attitude, would not give me a chance to say a word.  He was shouting and ranting uncontrollable. Just irate, so loud, that it drew attention of other teachers.  This type behavior is unacceptable. (*sic*)

(Doc. 31, p. 17)

Hill testified that Perkins gave her a good evaluation for the 2009 - 2010 school year and recommended her continued employment. (Doc. 29-3, p. 28)

In a noted dated February 11, 2011, Hill wrote as follows:

Mr. Perkins showed me how he wanted the units clean, he followed us room to room only to harass.  I went to one room, knowing he was following.  I clean it twice he call me back to the same room telling me it was not clean.  I told him he was not going to keep calling me back for every room slowing me down I went to speak with Mr. Daily.  He left but return again. (*sic*)

(Doc. 14, p. 9)

In a note dated May 6, 2011, Hill wrote that during the staff meeting that day, Perkins

expressed concern about work that was not done overnight and advised the staff to work as a team. Hill stated that she did her job but Perkins said that was not enough. Hill then told Perkins that they needed to speak with Principal Dailey and she left the meeting. (Doc. 31, p. 8) Hill then went to Principal Dailey's office to complain about Perkins. (*Id.*) After she left Dailey's office, Hill encountered Perkins.

Hill described her encounter with Perkins as follows:

> [Perkins] waited for me to reach him and ask what was I saying I told him I was not talking to him. he then followed me yelling as if he was going to grab me[5] I told him to get out of my face twice he followed me out the door still yelling I told him I was going to tell my husband. I went to tell Mr. Dailey. to tell him to keep out of my face. Mr. Perkins said he was go to call the police and I told him OK. (*sic*)

(Doc. 31, p. 18-19)[6]

In a noted dated May 6, 2011, Hill wrote that after she went to Principal Dailey's office, he asked Hill to go home. (Doc. 31, p. 20)

On May 9, 2011, Perkins wrote a memorandum to Hill regarding complaints about the thoroughness of cleaning her assigned areas and her "continuous behavior problem." The memorandum indicates that a copy was sent to Principal Dailey, Bryan Hack in Human Resources, and "Personnel File." (Doc. 31, p. 21)

In a note dated May 11, 2011,[7] Hill wrote as follows:

> I did not attend the meeting. Waited for Mr. Perkins to leave campus. He came where we were, I saw him and walked off. He call me and I told him that I would

---

[5] At deposition, Hill testified that Perkins had grabbed her during this confrontation. (Doc. 29-3, p. 8)

[6] There is no evidence that Perkins or Hill called the police.

[7] This statement did not contain the year, but since Hill was at Chickasaw Magnet in 2012, the Court presumes the statement was written May 11, 2011.

get the information for co-worker. (*sic*)

(Doc. 14, p. 8)

In a note dated May 12, 2011, Hill wrote as follows:

At this time I'am going to put a restranting order on him to stay away. He was reprimand to adhere and to follow policies and procedures. He have not followed them at all. I've all ready told Human Resources about his scary behavior. (*sic*)

(Doc. 31, p. 23)

Hill testified that generally when Perkins "got mad, everybody would catch it" and that "he would make it tough" for all custodians male and female. However, after she reported Perkins "it got worse" and he told her coworkers that Hill and Lewis were the "problems." (Doc. 29-3, p. 16, 35-36)

Hill was never suspended or demoted and continues to work for the school system. (Doc. 29-3, p. 6-7) In the summer of 2011, Hill transferred to Chickasaw Magnet School for the 2011-2012 school year. She has not had any problems and has worked there for almost three years. (Doc. 29-3, p. 7, 19)

### III. Conclusions of Law

### A. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party raises the assertion "that a fact cannot be or is genuinely disputed", the party must

(A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The Board, as the party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the Board has satisfied its responsibility, the burden shifts to Hill, as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of

the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

### IV. Analysis

### A. Exhaustion of administrative remedies

Hill filed her complaint on August 15, 2012. (Doc. 1) However, Hill did not provide the Court with a copy of a right to sue letter from the EEOC to establish exhaustion of her administrative remedies before filing suit or that she filed suit within ninety (90) days of receipt of her right to sue letter. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies.") (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir.1999)).

However, "while the exhaustion requirement is mandatory, it is not a jurisdictional prerequisite and so is subject to certain equitable remedies, including tolling, estoppel, and waiver." *Tarmas v. Mabus*, 2010 WL 3746636, *4 (M.D. Fla. Sept. 21, 2010) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) and "explaining in context of a Title VII action that failure to exhaust administrative remedies is not

jurisdictional prerequisite to filing suit in federal court"). Also, "receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification." *Wilkerson v. H&S, Inc*. 366 Fed. Appx. 49, 51 (11th Cir. 2010) (citing *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569-70 (11th Cir.1996) (receipt of a right to sue letter is subject to equitable modification) and *Zipes,* 455 U.S. at 398, 102 S.Ct. at 1135; *see also Tie Qian v. Secretary, Dept. of Veterans Affairs*, 432 Fed. Appx. 808, 810 (11th Cir. 2011) ("A plaintiff in a Title VII action is required to file suit within 90 days after receiving a 'right-to-sue letter,' although this is not a jurisdictional prerequisite, and a defendant must assert the failure to file suit within 90 days as a defense. ") (citations omitted).

In the answer to the complaint, the Board raised the affirmative defense of statute of limitation because "no charge of discrimination, naming the Board . . . as a Respondent, was filed with the [EEOC] within One Hundred and Eighty (180) days of any alleged discriminatory act." and that "[n]o civil action was filed within ninety (90) days of [Hill's] receipt of the Right to Sue letter naming the Board . . .  as a Defendant." (Doc. 19, p. 2)  Hill's Amended EEOC charge named Perkins and "Mobile County Public Schools" as the entities that she believed discriminated against her. (Doc. 31, p. 8)  However, the Board did not raise this affirmative defense in either a motion to dismiss or in the motion for summary judgment.  Thus, the Court finds that the Board has waived its affirmative defense of statute of limitations and its affirmative defense of failure to exhaust administrative remedies on basis that the Board was not named in the amended EEOC charge. *Cf. Tarmas*, 2010 WL 3746636, at *5 (finding that the Navy asserted the affirmative defense of failure to exhaust administrative remedies in its answer and "reiterated this in its summary judgment motion as grounds for dismissal of the earlier claims", and therefore, had "not waived its right to assert exhaustion.")

### B. Hostile environment sexual harassment

Hill alleges Perkins' sexually harassed her in March 2010 and made sexual comments about her in August 2010. On motion for summary judgment, the Board argues that Perkins' comments to Hill, taken in the light most favorable to her, do not constitute sexual harassment that is sufficiently severe and pervasive to alter the conditions of Hill's employment and create an abusive working environment.

The Board, as Hill's employer may be vicariously liable to her when the hostile environment has been created by a Perkins as a supervisor "with immediate (or successively higher)" authority over Hill. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 2292–93 (1998). In *Faragher* and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court clarified that there are two types of sexual harassment actionable under Title VII. *Bryant v. School Bd. of Miami Dade County,* 142 Fed.Appx. 382, 383-384 (11th Cir. 2005). If a benefit of employment is connected to a demand for sexual favors, the employer may be liable for sexual discrimination under Title VII if the employee suffers a tangible employment action as a result of refusing the demand. *Bryant,* 142 Fed.Appx. at 383-384 (citing *Ellerth*, 524 U.S. at 753-754, and dispensing with the former "quid pro quo" description). If that is not the case, then the employee may have an actionable sexual harassment claim if the employee establishes that the conduct is so severe or pervasive that it alters the terms and conditions of the employment. In other words, creates a hostile work environment. *Bryant*, 142 Fed. Appx. at 384.

Hill alleged that she was both "sexually harassed" and "discriminated" against (doc.1). However, Hill has not presented any evidence that she suffered a tangible employment action as defined by the Supreme Court: "a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."

*Ellerth*, 524 U.S. at 753-54, 118 S.Ct. at 2265; *Bryant*, 142 Fed. Appx. at 384. Hill testified that she was never suspended or demoted and was still employed with the System. She also testified that Perkins gave her a good evaluation for the 2009 – 2010 school year and that Principal Perkins offered her a transfer to another school but she refused because the school was too far from her home. Therefore, since no tangible employment action occurred, the Court will evaluate the complaint as a hostile work environment claim.

In that regard, "Title VII prohibits employers from sexually harassing employees and thereby creating a hostile work environment. *Arafat v. School Bd. of Broward County*, - - - Fed. Appx. - - -. 2013 WL 6244735, 1 (11th Cir. 2013) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir.2010) (en banc)). To sufficiently plead her prima facie case, Hill "must allege that (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on her gender, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) there is a basis for holding the employer liable." *Arafat,* 2013 WL 6244735, at*1 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc)). "[T]he evidence of harassment is considered both cumulatively and in the totality of the circumstances." *Reeve*s, 594 F. 3d at 808. Also, "[e]ither severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Id.* (italics in original). "In evaluating allegedly discriminatory conduct," the district court considers "its 'frequency ...; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.*, at 808-809 (citation omitted).

Additionally, Hill must prove that her "environment was both subjectively and

objectively hostile." *Id.*, at 809. In that regard Hill must "'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* (citation omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Id.* (citation omitted).

There is no dispute of fact that Hill is a member of protected group, was subject to unwelcome harassment, and that the harassment was based on her gender. *Arafat,* 2013 WL 6244735, at *1. However, viewing the allegations in the light most favorable to Hill, the Court finds that she is unable to establish the fourth element of her prima facie case, that the sexual "harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Id.*

As to Hill's subjective perception, Hill argues that she was so depressed by Perkins' behavior that she sought mental health treatment. (Doc. 31, p. 50) However, "a plaintiff's subjective feelings and personal reactions are not the complete measure of whether conduct is of a nature that it interferes with job performance. If it were, the most unreasonably hypersensitive employee would be entitled to more protection than a reasonable employee, and the standard would not have an objective component." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).

There are only two instances that could even arguably constitute conduct of a sexually harassing nature: the comments of Perkins in March 2010 and possible the comments of Perkins of August 2010. *See supra*. Judging the objective severity of these incidents from the perspective of a reasonable person in Hill's position, and considering all the circumstances, the Court finds

that Perkins' conduct was not severe enough on any one occasion or pervasive enough to establish Hill's prima facie case for hostile work environment based on sex. *See Gupta*, 212 F. 3d at 585 (finding insufficient that Gupta's supervisor, over a period of six or seven months, called Gupta repeatedly at home, repeatedly asked her to lunch, stared at her twice, complimented her appearance once, touched her ring and bracelet once, touched the hem of her dress once, and placed his hand on her knee once). Title VII is not a "federal civility code" *Mendoza*, 195 F. 3d at 1245, and does not create liability for "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788. Therefore, the Board is entitled to summary judgment as to this claim.

### C. Retaliation

Title VII's anti-retaliation provision prohibits the Board from retaliating against Hill "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Because Hill's retaliation claim is based on circumstantial evidence, she may rely on the "burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 93 S. Ct. 1817 (1973)" to prove her case. *Brown v. Ala. Dep't of Transportation,* 597 F. 3d 1160, 1181 (11th Cir. 2010); *Reeve v. Secretary, Dept. of Homeland Sec.*, 524 Fed. Appx. 779, 781 n.2 (11th Cir. 2013). Alternatively, she may present "circumstantial evidence that creates a triable issue concerning [the Board's] discriminatory intent." *Edmond v. University of Miami*, 441 Fed. Appx. 721, 723 (11th Cir. 2011) (citing *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir.2011) (stating that "the *McDonnell Douglas* framework is not, and never was intended to be,

the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case")).

In order to establish a *prima facie* case of retaliation under Title VII, Hill must show "that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse employment action, and (3) there is a causal relationship between the two events." *Peters v. HealthSouth of Dothan, Inc.*, 2013 WL 5567734, 3 (11th Cir. 2013) (citation omitted).

There is no dispute of fact that Hill engaged in a statutorily protected activity. Hill complained to Principal Dailey and to Mr. Hack in Human Resources in August 2010, filed a Grievance with Principal Dailey against Perkins in September 2010, and filed a charge with the EEOC on September 24, 2010. *See Walton-Horton v. Hyundai of Alabama*, 402 Fed. Appx. 405, 408 (11th Cir. 2010) ("Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits."); *Tarmas v. Sec'y of Navy,* 433 Fed. Appx. 754, 762 (11th Cir. 2011) ("There is no dispute that the filing of a claim with the EEOC is a 'statutorily protected activity.'")

As to the second element, in the context of a claim of Title VII retaliation, a "materially adverse action" means one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F. 3d 961, 973-974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006)); *Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*, 518 Fed. Appx. 653, 655 (11th Cir. 2013). Thus, the "materiality of the alleged adverse action is judged by an objective standard." *Foshee v. Ascension Health-IS, Inc.*, 384 Fed. Appx. 890, 892 (11th Cir. 2010).

The Board argues that Hill was not subject to a materially adverse employment action.

The Board points out that Hill was not suspended or demoted,[8] but instead received satisfactory evaluations from Perkins, was transferred to another school at her request, and is still employed with the school system.

Hill bases her allegation of a materially adverse employment action on the fact that Perkins started "writing" her up after she complained.  In support, Hill provided three memoranda written by Perkins to Principal Dailey in late August 2010 that set forth certain deficiencies in Hill's work performance.  The memoranda were written shortly after Hill complained to Principal Dailey on August 11, 2010 and complained to Mr. Hack in Human Resources on August 18, 2010, about Perkins' continued accusations of an affair between Hill and Lewis.  (Doc. 31, p. 13-15)  Hill also provided another memorandum Perkins wrote to Principal Dailey on May 9, 2011, regarding complaints about Hill's work and her "continuous behavior problem."   This memorandum followed a verbal confrontation between Hill and Perkins during and following a May 6, 2011 staff meeting.  Both went to Principal Dailey to complain about the other.

All of the memoranda reflect that a copy was sent to Principal Dailey, a Human Resources person, and Hill's "Personnel File." (Doc. 31, p. 13-15, 21)   On one occasion, Hill objected to placement of one of the memoranda in her personnel file (Doc. 31, p. 16) but there is no evidence before the Court as to whether these documents actually became a part of her personnel records.

Judging the materiality of Perkins' actions by an objective standard, the Court finds that Hill has failed to meet her burden to establish a materially adverse action on the part of the Board and therefore, has failed to make a prima facie case of retaliation.  The memoranda to Principal

[8]  Hill testified that she was not suspended or demoted (Doc. 29-3, p. 6)

17

Dailey, Perkins' scrutiny of Hill's work, and the verbal confrontations between Hill and Perkins represent the sort of "petty slights, minor annoyances, and simple lack of good manners" that objectively fail to constitute action that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern*, 548 U.S. at 68, 126 S. Ct. at 2415 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). In sum, it appears to be bickering between Perkins' and Hill that had no adverse effect on Hill.[9]

Specifically, even assuming that Perkins' memoranda to Principal Dailey were not removed from Hill's personnel file, she has not alleged any affect upon her employment that would dissuade a reasonable person from engaging in protected activity. *Cox v. City of Tampa*, 418 Fed. Appx. 845, 847 (11th Cir. 2011) (plaintiff "failed to establish that the lower score on her evaluation, which her supervisor testified was 'excellent,' affected the terms or conditions of her employment in any manner and would have dissuaded a reasonable person from filing a complaint."); *see Spencer v. City of Hollywood, Fla*., 2009 WL 980274 (S.D. Fla. Apr. 10, 2009) ("there is no indication that this was a type of reprimand that would dissuade a reasonable worker from making or supporting a charge of discrimination. Further, Plaintiff has put forth no argument and no evidence that the [written] reprimand itself constituted a tangible employment action resulting in a significant change in Plaintiff's employment status."); *Penn v. USF Holland, Inc.,* 770 F.Supp.2d 1211, 1239 (N.D. Ala. 2010) (The written warning letters would not dissuade a reasonable worker from making a charge of discrimination, and they did not dissuade

---

[9] Also, Hill did not deny that she engaged in the conduct about which Perkins wrote the memoranda to Principal Dailey, *i.e.*, that she failed to attend staff meetings or failed to clock out.

Penn as he continued to file grievances for many of the warning letters he received from Holland.") (citing *Bush v. Regis Corp.,* 257 Fed. Appx. 219, 222 (11th Cir. 2007) (finding warning letters, among other things, insufficient to establish adverse employment action under newly articulated *Burlington* standard)); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir.2001) ("criticisms of an employee's job performance-written or oral-that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit"); *Cf. Kurtts v. Chiropractic Strategies Group, Inc.*, 481 Fed. Appx. 462, 467-468 (11th Cir. 2012) ("A jury crediting Kurtts's account could find that Kurtts complained about the harassment, was immediately told that it was uncertain whether any action would be taken, and that she should instead consider taking her last paycheck. A reasonable jury could conclude that CSG's response 'might deter a reasonable employee' from lodging a complaint about harassment.") (citation omitted)

Therefore, the Board is entitled to summary judgment as to this claim.

**D. Retaliatory hostile work environment**

In *Gowski v. Peake,* 682 F.3d 1299, 1312 (11th Cir. 2012), the Eleventh Circuit joined its sister circuits and recognized a cause of action for retaliatory hostile work environment. The Eleventh Circuit explained that "[t]o establish a hostile work environment claim under Title VII, the plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gowski*, 682 F. 3d at 1311(citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) and *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir.2002)). The Eleventh Circuit then examined whether the defendants subjected the plaintiffs "to a hostile work environment in

retaliation for their EEO activity" and looked to whether "the actions complained of were sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting an adverse employment action." *Id*. at 1312. The circuit court stated as follows:

> The requirement that the harassment be "severe or pervasive" contains an objective and a subjective component. *Miller*, 277 F.3d at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." *Id.* (internal quotation marks omitted). In evaluating the objective severity of the harassment, this court looks at the totality of the circumstances and considers, among other things: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.
>
> Discrete acts cannot alone form the *basis* of a hostile work environment claim. *See Davis v. Coca–Cola Bottling Co. Consol*., 516 F.3d 955, 970 (11th Cir. 2008) (emphasis added); *see also McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (as opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim addresses acts "different in kind" whose "very nature involves repeated conduct," such as " 'discriminatory intimidation, ridicule, and insult.' " (quoting *Nat'l R.R. Passenger Corp.,* 536 U.S. at 117, 122 S.Ct. 2061)). But the jury could *consider* discrete acts as part of a hostile work environment claim. *See, e.g., Nat'l R.R. Passenger Corp*., 536 U.S. at 117, 122 S.Ct. 2061 (a hostile work environment claim depends on "a series of separate acts that collectively constitute one 'unlawful employment practice.' " (internal citation omitted)); see also *Chambless v. Louisiana–Pacific Corp.*, 481 F.3d 1345, 1349–50 (11th Cir. 2007) (discussing, for timeliness purposes, discrete acts that are sufficiently related to a hostile work environment claim that they can be considered part of the same claim).

Gowski, 682 F.3d at 1312 -1313 (italics in original).

Hill alleges that after she complained about Perkins' comments, Perkins created a retaliatory hostile work environment which resulted in several confrontations and shouting matches between them regarding his retaliatory scrutiny of her work.

Viewing the totality of Hill's allegations as to Perkins' conduct in the light most

favorable to Hill, the Court finds that she has failed to establish a prima facie case of retaliatory hostile environment. The discrete acts of retaliation and the behavior Perkins exhibited toward Hill simply do not meet the objective component. As to frequency and severity of the conduct, from August 2010 (when Hill reported Perkins' comments) through the end of the school year of 2011 (when Hill accepted a transfer), Perkins wrote four memoranda to Principal Dailey and Hill and Perkins engaged in four distinct confrontations as recorded by Hill - December 10, 2010 (describing Perkins as shouting, ranting, uncontrollable, irate, and loud); February 11, 2011 (Perkins followed custodians room to room and required Hill to re-clean a room); May 6, 2011 (staff meeting following which Perkins yelled at Hill and she thought he might grab her, she told him to get out of her face)[10]; and again on May 6, 2011 (Hill described Perkins as loud and uncontrollable when they were in Principal Dailey's office regarding the earlier confrontation). Hill testified that Perkins exhibited the same unpleasant behavior toward the other custodians, male and female. (Doc. 29-3, p. 16)

In sum, Hill has failed to show conduct that objectively could be determined to be so severe and pervasive as to create a retaliatory hostile work environment. Therefore, the Board is entitled to summary judgment as to this claim.

### IV. Conclusion

Upon consideration of the evidence and for the reasons set forth herein, the Court finds that the Board is entitled to judgment as a matter of law. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as

---

[10] On this allegation, Hill's deposition testimony contradicts her written notes which were submitted in support of her opposition to summary judgment. At deposition, Hill testified that Perkins grabbed her. (Doc. 29-3, p. 8)

a matter of law under that version of the facts.") (citation omitted).  Accordingly, the motion for summary judgment is **GRANTED**.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 22nd day of April 2014.

<u>s/   Kristi K. DuBose</u>
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE